UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FRANCISCO JAVIER MONREAL, MD,

                Plaintiff,

v.                                            5:11-CV-0075
                                               (GTS/TWD)
THE STATE OF NEW YORK; NEW YORK
STATE DEP'T OF HEALTH, Office of Prof.
Med. Conduct; NEW YORK STATE EDUC.
DEP'T; and NEW YORK STATE UNIFIED
COURT SYS.,[1]

                Defendants.
_____

APPEARANCES:                                 OF COUNSEL:

FRANCISCO JAVIER MONREAL
  Plaintiff, *Pro Se*
4242 Baker Hill Road
Jamesville, NY 13078

HON. ERIC T. SCHNEIDERMAN            HEATHER R. RUBENSTEIN, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204-2465

GLENN T. SUDDABY, United States District Judge

**MEMORANDUM-DECISION and ORDER**

      Currently before the Court, in this *pro se* civil rights action filed by Francisco Javier

Monreal ("Plaintiff") against the State of New York, the New York State Department of Health's

---

[1]      In his Amended Complaint, Plaintiff identifies Defendants in this action as "the State of New York, its Health (OMPC) & Education Departments, and its Judicial System." (Dkt. No. 5.) Out of special solicitude to Plaintiff, the Court has liberally construed the Amended Complaint as intending to assert claims against the four above-captioned Defendants.

Office of Professional Medical Conduct, the New York State Education Department, and the New York State Unified Court System ("Defendants"), is Defendants' motion to dismiss Plaintiff's Amended Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5), and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 7.) For the reasons set forth below, Defendants' motion is granted.

I.   **RELEVANT BACKGROUND**

   A.   **Plaintiff's Claims**

Generally, liberally construed, Plaintiff's Amended Complaint alleges that, between approximately February of 2005 and October of 2008, at various locations in the State of New York, Defendants violated Plaintiff's following rights: (1) his rights under the First Amendment by revoking his medical license for expressing his medical opinions; (2) his rights under the Fourteenth Amendment by denying him proper notice and the opportunity to appear, and present evidence in his defense, at the administrative hearing at which Defendants revoked his license; and (3) his rights under the Fourteenth Amendment by not providing sufficient judicial review of the Defendants' actions revoking his license.  (*See generally* Dkt. No. 5 [Plf.'s Amend. Compl.].) Familiarity with the factual allegations supporting these claims in Plaintiff's Amended Complaint is assumed in this Memorandum-Decision and Order, which is intended primarily for review by the parties.  (*Id*.)

   B.   **Defendants' Motion**

Generally, in support of their motion to dismiss, Defendants argue as follows: (1) the Complaint has not been served on any named Defendant; (2) Defendants are protected from liability as a matter of law by the doctrine of sovereign immunity under the Eleventh

Amendment; (3) the Amended Complaint fails to state a claim upon which relief can be granted; (4) Plaintiff commenced this action after the expiration of the three-year statute of limitations; (5) Plaintiff's claims are precluded as a matter of law by the doctrine of collateral estoppel; and (6) the *Rooker-Feldman* doctrine prevents the Court from exercising jurisdiction in this action. (*See generally* Dkt. No. 7, Attach. 1 [Defs.' Memo. of Law].)

Generally, in Plaintiff's response to Defendants' motion, he argues as follows: (1) service on the Attorney General of the State of New York, as counsel for the State, constitutes service on the State of New York; (2) Defendants' assertion of sovereign immunity is unjust; (3) the Amended Complaint states claims that are legally sufficient; (4) because Defendants' actions violating Plaintiff's rights continued through the date he commenced this action, the applicable statute of limitations does not bar his claims; and (5) neither collateral estoppel nor the *Rooker-Feldman* doctrine applies, because Plaintiff has not yet had an opportunity to present his full case in a court of law. (*See generally* Dkt. Nos. 8, 11-14.)

Defendants did not reply to Plaintiff's response. (*See generally* Docket Sheet.)

On May 5, May 9, June 7, and August 8, 2011, Plaintiff filed four letters in further response to Defendants' motion. (Dkt. Nos. 11-14.) Not only were the letters filed after the expiration of the deadline for any further briefing on Defendants' motion (*see* Docket Entry dated March 24, 2011), the letters effectively constituted sur-replies, in violation of Local Rule 7.1(b)(1). On January 21, 2011, Plaintiff receive a courtesy copy of the Local Rules of Practice for this Court. (Dkt. No. 2.) Because they were wilfully filed in violation of the motion's briefing deadline and Court's Local Rules, the letters will not be considered by the Court. The Court would add only that, even if it were to consider the letters, that consideration would not change the outcome of this Memorandum-Decision and Order.

3

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

### B. Legal Standard Governing Motions to Dismiss for Insufficient Service of Process

Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court--on motion or its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

## C. Legal Standard Governing Motions to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted].  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949  (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citations omitted).

This pleading standard applies even to *pro se* litigants.  While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se*

plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12.[2] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[3] Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson*, 549 F. Supp.2d at 214, n.28 [citations omitted].[4]

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3)

---

[2] *See Vega v. Artus,* 610 F. Supp.2d 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F. Supp.2d at 214 & n.34 (citing Second Circuit cases).

[3] *See Vega,* 610 F. Supp.2d at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F. Supp.2d at 214 & n.34 (citing Second Circuit cases).

[4] It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F. Supp.2d at 214 & n.35 (explaining holding in *Erickson*).

documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[5] Moreover, in the Second Circuit, a *pro se* plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his complaint–to the extent those papers are consistent with the allegations in the complaint.

### D.  Legal Standard Governing Application of Collateral Estoppel

"Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party of his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979).  Collateral estoppel precludes relitigation of issues

---

[5] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .  However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

actually litigated and necessary to the outcome of the first action. *Parklane*, 439 U.S. at 327 n. 5. The Second Circuit has noted that while New York law determines the preclusive effect of a New York State court judgment, there appears to be no significant difference between federal and New York law regarding collateral estoppel. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002) (citing *Pike v. Freeman*, 266F.3d 78, 90 n.14 [2d Cir. 2001]). A party asserting collateral estoppel must prove four elements: (1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been a full and fair opportunity for the party to litigate the issue in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits. *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 360 (2d Cir. 1995).

E.   **Legal Standard Governing Application of the *Rooker-Feldman* Doctrine**

Under 28 U.S.C. § 1257, the United States Supreme Court has exclusive appellate jurisdiction to reverse or modify a judgment by a state's highest court. The *Rooker-Feldman* doctrine provides that losing parties in state court cannot bring a claim in federal district court to review and reject a judgment by the state court. *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414 [1923]; *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 [1983]). Claims brought in district court in violation of the *Rooker-Feldman* Doctrine are properly dismissed for lack of subject-matter jurisdiction. *Exxon Mobile Corp.*, 544 U.S. at 284. The *Rooker-Feldman* doctrine extends to claims that are "inextricably intertwined" with issues already settled in state court. *Bridgewater Operating Corp. v. Feldstein*, 346 F.3d 27, 29 (2d Cir. 2003) (holding that any claim that directly implicates a final judgment in state court is barred by *Rooker-Feldman*).

*Rooker-Feldman* does not override or supplant other preclusion doctrines. *Exxon Mobile Corp.*, 544 U.S. at 284.

    F.    **Legal Standard Governing Plaintiff's Claims**

Plaintiff's claims arise under a federal civil rights law that provides a remedy for individuals who have been deprived of their federal statutory or constitutional rights under color of state law. More specifically, 42 U.S. § 1983, the statute upon which the Plaintiff relies for each of his claims, provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, [or] regulation . . . of any State . . . , subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983 (2006).

Generally, to establish a claim under § 1983, a plaintiff must establish, by a preponderance of the evidence, each of the following three things: (1) the defendant was acting under color of state law; (2) the defendant's conduct deprived the plaintiff of a federal right, that is, a right secured by the Constitution or federal statute; and (3) the defendant's conduct caused an injury to the plaintiff. *See O'Neil v. Bebee*, 5:09-CV-1133, 2010 WL 502948, at *5 (N.D.N.Y. Feb. 10, 2010) (Suddaby, J.) (citing *Dwares v. City of New York*, 985 F.2d 94, 98 [2d Cir. 1993]).

**III.**    **ANALYSIS**

    A.    **Whether Plaintiff's Amended Complaint Should Be Dismissed Because of Defendants' Sovereign Immunity**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law. (Dkt. No. 7, Attach. 1 [Defs.' Memo. of Law]). Plaintiff's argument that the State's assertion of sovereign immunity is "unfair" is not

an exception to doctrine of sovereign immunity.

Because the Court lacks subject-matter jurisdiction for these claims, Plaintiff's Amended Complaint is dismissed.

### B. Whether, in the Alternative, Plaintiff's Claims Should Be Dismissed Because of the Statute of Limitations

After carefully considering the matter, the Court answers this question in the affirmative as to Plaintiff's claims against the State of New York. the New York State Department of Health's Office of Professional Medical Conduct, and the New York State Education Department; and the Court answers this question in the negative as to Plaintiff's claim against the New York State Unified Court System.

The last relevant actions taken by the Health and Education Departments were the revocation of his medical license and the denial of his administrative appeal of that decision. (Dkt. No. 5, Attach. 2 [Plf.'s Amend. Compl.].) These events occurred in July and August of 2007, which is more three years before Plaintiff commenced this action on January 21, 2011. (*Id*.) Therefore, Plaintiff's claims against Defendants the State of New York, the New York State Department of Health's Office of Professional Medical Conduct, and the New York State Education Department are barred by the applicable statute of limitations.

However, the last relevant actions taken by the New York State Unified Court System were the judgment in his Article 78 petition by the Third Department of the Appellate Division on June 12, 2008, and the denial of Plaintiff's motion for leave to appeal by the Court of Appeals on September 16, 2008. (Dkt. No. 5, Attach. 13 [Plf.'s Amend. Compl.].) Both of these actions occurred within three years of Plaintiff commencing this action. Therefore, the claims against the New York State Unified Court System are not barred by the applicable statute of limitation.

For these reasons, only Plaintiff's claims against the State of New York, the New York State Department of Health's Office of Professional Medical Conduct, and the New York State Education Department are dismissed based on this alternative ground.

**C.     Whether, in the Alternative, Plaintiff's Claims Should Be Dismissed Because of the Doctrine of Collateral Estoppel**

After carefully considering the matter, the Court answers this question in the affirmative as to Plaintiff's claim against the State of New York, and the New York State Department of Health's Office of Professional Medical Conduct, and the New York State Education Department as to Plaintiff's claim for violation of his Fourteenth Amendment rights; and the Court answers this question in the negative as to Plaintiff's claim for violation of his First Amendment rights, and as to Plaintiff's claim against the New York State Unified Court System for violation of his Fourteenth Amendment rights.  Plaintiff already raised the issue that the Office of Professional Medical Conduct violated his due process rights in his Article 78 petition to the Appellate Division.  (Dkt. No. 5, Attach. 13 at  67 [Plf.'s Amend. Compl.].)  The Appellate Division ruled against Plaintiff on this issue, and issued a judgment upholding the validity of the hearing on the merits.  (Dkt. No. 5, Attach. 13, at 78 [Plf.'s Amend. Compl.].)

Generally, a prior unfavorable determination in an Article 78 action brought by a plaintiff against state employees in their official capacities does not serve to collaterally estop that plaintiff from subsequently commencing a 42 U.S.C. § 1983 civil rights action for damages against a state employee in his individual capacity, because the relief sought in the § 1983 action was unavailable in the Article 78 action.[6]  Here, however, Plaintiff does not appear to have

---

[6]     *See Hicks v. Richard Low*, 309 F. App'x 472, 474 (2d Cir. 2009) ("Hicks argues that the New York state court Article 78 proceeding collaterally estops the Defendants-Appellees from relitigating the issue of whether a due process violation occurred. We disagree. Unlike the Article 78 proceeding, which could only be brought against the agency and the officers in their

13

asserted a claim against any state employee in his individual capacity.  As a result, the Court finds that the doctrine of collateral estoppel applies to those issues raised in Plaintiff's prior actions in state court.

However, as far as the Court can determine, Plaintiff's other two claims raise issues that were not considered in any of the previous proceedings, and are thus not precluded by collateral estoppel.

For these reasons, only Plaintiff's claim against the State of New York, the New York State Department of Health's Office of Professional Medical Conduct, and the New York State Education Department for violating his Fourteenth Amendment rights is dismissed based on this alternative ground.

> D.      Whether, in the Alternative, Plaintiff's Claims Should Be Dismissed Because of the *Rooker-Feldman* Doctrine

After carefully considering the matter, the Court answers this question in the affirmative

---

official capacities, in this case the defendants are being sued as individuals. Further, the defenses of qualified immunity and lack of personal involvement were not available to the defendants in the Article 78 proceeding, nor were money damages at stake."); *Ford v. Krusen*, 06-CV-0890, 2009 WL 959534, at *6 (N.D.N.Y. Apr.6, 2009) (Report-Recommendation by Peebles, M.J., adopted by Suddaby, J.) ("[T]he prior unfavorable Article 78 determination [brought by the prisoner-plaintiff against prison officials] did not serve to foreclose the [prisoner-] plaintiff from commencing this subsequent section 1983 civil rights action [against prison officials] for damages, since such relief is unavailable in an Article 78 proceeding."); *Proctor v. Kelly*, 05-CV-0692, 2008 WL 5243925, at *8, n. 20 (N.D.N.Y. Dec.16, 2008) (Suddaby, J.) ("The Court would only note that the doctrine of collateral estoppel does not appear to apply under the circumstances. Among other things, Plaintiff sued Defendant Goord is his official capacity in his Article 78 proceeding, and he now sues Defendant Goord in his individual or personal capacity."); *Fletcher v. Goord*, 07-CV-0707, 2008 WL 4426763, at *10 (N.D.N.Y. Sept.25, 2008) (Report–Recommendation by Lowe, M.J., adopted by Sharpe, J.) ("Simply stated, I find nothing in Justice Ceresia's ruling saying that Plaintiff is not entitled to money damages due to the miscalculation. The issue may have been presented to the New York State Supreme Court in a vague and obscure way (due to Plaintiff's request for "any other form of relief" in his Petition), but it does not appear to have been squarely decided by the Supreme Court, nor does it appear to have been essential to the Court's decision.").

14

as to Plaintiff's claims for violation of his Fourteenth Amendment rights, and in the negative as to Plaintiff's claim for violation of his First Amendment rights. Any consideration of Plaintiff's due process claims would implicate the judgment of the state court, either directly (because Plaintiff challenges the judgment itself) or indirectly (because the Appellate Division rejected Plaintiff's prior argument that the Office of Professional Medical Conduct's hearing denied him his due process). (Dkt. No. 5, Attach. 13, at 78 [Plf.'s Amend. Compl.].)

However, as the Court noted in Part III(C) of this Memorandum-Decision and Order, Plaintiff's claim for violation of his First Amendment rights was not raised in the prior proceedings. Therefore, the *Rooker-Feldman* doctrine does not apply to Plaintiff's First Amendment claim.

For these reasons, only Plaintiff's claims for violation of his Fourteenth Amendment rights are dismissed based on this alternative ground.

### E. Whether, in the Alternative, Plaintiff's Amended Complaint Should Be Dismissed for Failure to State a Claim upon Which Relief Can Be Granted

After carefully considering the matter, the Court answers this question in the affirmative as to Plaintiff's claim for violations of his First Amendment rights for the reasons stated in Defendants' memorandum of law. (Dkt. No. 7, Attach. 1 [Defs.' Memo. of Law].) The Court also answers this question in the affirmative as to Plaintiff's claims for violations of his Fourteenth Amendment rights for the reasons stated in Parts III.A. through III.D. of this Memorandum-Decision and Order. Furthermore, the Court notes that Plaintiff's own attachment to his Amended Complaint plausibly suggests that he received all the process he was due. (Dkt. No. 5, Attach. 13 at 2, 78 [Plf.'s Amend. Compl.].)

For these reasons, Plaintiff's Amended Complaint is dismissed based on this alternative ground.

F.  **Whether, in the Alternative, Plaintiff's Amended Complaint Should Be Dismissed Because of Insufficient Service of Process**

Generally, *pro se* litigants receive special leniency in judicial proceedings. Here, Plaintiff clearly tried to serve the State of New York by serving the New York State Attorney General's office. (Dkt. No. 6.) Neither the proof of service returned by Plaintiff nor Defendants' memorandum of law state Mr. House's position in the Attorney General's office. (Dkt. No. 6 [Plf.'s Summons]; Dkt. No. 7, Attach. 1 [Defs'. Memo. of Law].) If Mr. House was at the time an Assistant Attorney General, then delivery of the summons constituted personal service on the State of New York under N.Y. C.P.L.R. § 307(1) and Fed. R. Civ. P. 4(j)(2)(B). In addition, after Defendants filed this motion to dismiss, Plaintiff served the Governor of New York on March 31, 2011. (Dkt. No. 9 [Plf.'s Summons].) This was within the 120-day deadline under Fed. R. Civ. P. 4(m), and constituted service on the State of New York under Fed. R. Civ. P. 4(j)(2)(A). However, from the record, it does not appear that Plaintiff has attempted to serve the Health or Education Departments or any member of the New York State Unified Court System.

Given the other deficiencies in Plaintiff's claims set forth above, the Court does not need to, and does not, decide the issue of the sufficiency Plaintiff's service of process.

G.  **Whether Plaintiff's Amended Complaint Should Be Dismissed With or Without Prejudice**

Generally, when a district court dismisses a *pro se* action, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend. *Abascal v. Hilton*, 04-CV-1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 13, 2008) (Kahn, J., adopting, on *de novo* review, Report-Recommendation by Lowe, M.J.) ("Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the

16

plaintiff has already been given a chance to amend his pleading."), *aff'd*, 357 F. App'x 388 (2d Cir. 2009); *accord*, *Shuler v. Brown*, 07-CV-0937, 2009 WL 790973, at *5 & n.25 (N.D.N.Y. March 23, 2009) (McAvoy, J., adopting Report-Recommendation by Lowe, M.J.), *Smith v. Fischer*, 07-CV-1264, 2009 WL 632890, at *5 & n.20 (N.D.N.Y. March 9, 2009) (Hurd, J., adopting Report-Recommendation by Lowe, M.J.).[7]

Moreover, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to

---

[7] *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading); *Coleman v. brokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir. 2010) ("Nor can we conclude that the district court abused its discretion in denying Coleman leave to amend. The district court afforded Coleman one opportunity to amend the complaint, and Coleman made no specific showing as to how he would cure the defects that persisted if given a second opportunity to amend."); *Dyson v. N.Y. Health Care, Inc .*, 353 F. App'x 502, 503-03 (2d Cir. 2009) ("[T]he district court did not abuse its discretion by dismissing Dyson's third amended complaint with prejudice. . . . [T]he district court afforded Dyson three opportunities to file an amended complaint so as to comply with Rule 8(a)(2), and, despite these, she did not plead any facts sufficient to show that she was plausibly entitled to any relief."); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("We do not mean to imply that the court has no power to dismiss a prolix complaint without leave to amend in extraordinary circumstances, such as where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible."); *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (affirming dismissal of *pro se* plaintiff's amended complaint without leave to amend, for failure to state a claim upon which relief can be granted, without engaging in analysis of whether second amended complaint would be futile); *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) ("Yang's amended complaint fails to remedy this defect in his pleadings. . . . His equal protection claim is dismissed."), *aff'd*, 71 F. App'x 90 (2d Cir. 2003); *Payne v. Malemathew,* 09-CV-1634, 2011 WL 3043920, at *6 (S.D.N.Y. July 22, 2011) ("Plaintiff has repeatedly failed to cure the defects in his claims despite having received detailed instructions and despite the bases of the dismissals having been specified in advance, and he has not identified any additional facts he could advance now that would address these defects. Accordingly, nothwithstanding Plaintiff's pro se status, leave to amend yet again is denied."); *Advanced Marine Tech. v. Burnham Sec., Inc.*, 16 F. Supp.2d 375, 384 (S.D.N.Y. 1998) ("While that failure to plead special damages with respect to the other alleged representations in theory might be cured by amendment, plaintiff already has amended once and has not sought leave to amend again. Accordingly, the fraud claims will be dismissed except to the limited extend indicated.").

be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) (citations omitted), *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied").[8]

Here, Plaintiff has already exercised his right to amend his Complaint. In addition, the sole claim that Plaintiff could conceivably assert (that officials from the Office of Professional Medical Conduct in their individual capacities violated his due process rights under the Fourteenth Amendment) is clearly barred by the expiration of the applicable statute of

---

[8] The Court notes that two Second Circuit cases exist reciting the standard as being that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Federal Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The problem with these cases is that their "rule out any possibility, however likely it might be" standard is rooted in the "unless it appears beyond doubt" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which was "retire[d]" by the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (2007). *See Gomez v. USAA Federal Sav. Bank*, 171 F.3d 794, 796 (relying on *Branum v. Clark*, 927 F.2d 698, 705 [2d Cir. 1991], which relied on *Conley v. Gibson*, 355 U.S. 41, 45-46 [1957]). Thus, this standard does not appear to be an accurate recitation of the governing law.

limitations, even if the amendment were to relate back to the date of the original Complaint under Fed. R. Civ. P. 15(c).

For all these reasons, the Amended Complaint should be dismissed *with prejudice*.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion to dismiss Plaintiff's Amended Complaint (Dkt. No. 7) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 5) is **DISMISSED with prejudice**.

Dated: June 29, 2012
Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge